C. D. Johnson, Appellee, v. Northern Minnesota Land & Investment Company et al., Appellant.

**MORTGAGES:** Stipulation for Insurance, Compliance with—Policy
1, 3 Payable to Assignee. A policy of insurance on mortgaged premises payable to one who has "assumed and agreed to pay" a mortgage on said premises, which mortgage requires the mortgagor to keep the buildings insured "for the benefit of the mortgagee," inures to the benefit of the mortgagee as a matter of equitable right and therefore complies with the condition of the mortgage requiring insurance.

**MORTGAGES:** Right to Foreclose—Special and General Clauses—
2 Harsh Results—Strict Construction to Avoid. The use of *special* and *general* clauses in a mortgage in an attempt to fix the rights and liabilities of the parties as to foreclosure, with attendant uncertainty as to the true meaning, renders appropriate the application of the following principles or rules of construction, to wit:

(1) *Ejusdem generis*—the particular governs the general.

(2) *Expressio unius est exclusio alterius*—the express mention of one thing implies the exclusion of another.

PRINCIPLE APPLIED: Action to foreclose mortgage because of failure "to keep property insured." The mortgage contained the following consecutive clauses:

1. An *express reservation* of the right to foreclose for failure "to pay taxes."

2. *No mention* of the right to foreclose for failure "to keep property insured," but providing that the holder might insure and hold the mortgage as security for the premiums.

3. An *express reservation* of the right to foreclose for "failure to pay principal or interest."

4. A general clause providing, "a failure to perform or comply with any of the foregoing conditions shall cause the whole sum to become due at once and this mortgage may be foreclosed immediately."

*Held,* the mortgagee had no right to foreclose for failure "to keep the property insured," as he had limited his right for such failure to the right to insure the property himself and hold the mortgage as security for the premiums, especially as such construction would avoid harsh and drastic results.

**MORTGAGES:** Stipulation for Insurance—Compliance with—Policy
1, 3  Payable to Assignee.

**MORTGAGES:** Stipulation for Insurance—Good Faith Effort to
4  Comply—Foreclosure—Right to Notice. A mortgagor procuring,
in good faith, an insurance policy on the mortgaged property in
order to comply with a requirement that he keep the property
insured, is entitled to notice of the mortgagee's objection to
the policy before starting foreclosure (if such right exists)
even though the mortgagor in procuring the policy innocently
and without intentional fraud misstated the amount of incum-
brance on the property.

**PRINCIPAL AND AGENT:** Apparent Authority of Agent—Right
5  to Rely. One has a right in good faith to rely, within reasonable
limits, upon the apparent authority of an agent.

PRINCIPLE APPLIED: Negotiations were pending between
owner of land and a prospective purchaser, a corporation. The
purchaser sent his agent, a mere employee, to the owner "to
close the deal." He carried a mortgage fully executed and
acknowledged by the corporation, which mortgage he was to
deliver to the owner when the owner delivered his deed to the
agent. Owner refused to deliver his deed until a clause, "Insur-
ance policies to be held with mortgage," was inserted in the
mortgage. The agent inserted the clause. Both the owner and
agent acted in good faith. Deed and mortgage were then
exchanged. The purchaser kept the deed. *Held*, the mortgage
was valid.

**PRINCIPAL AND AGENT:** Principal Repudiating Unauthorized
6  Acts of Agent—Keeping Benefits. The principal will not be
permitted to repudiate the unauthorized acts of his agent and
still retain the benefits of the agent's acts.

*Appeal from Warren District Court.*—HON. J. H. APPLE-
GATE, Judge.

WEDNESDAY, JANUARY 13, 1915.

SUIT in equity to foreclose a mortgage on real estate. At
the time of the beginning of the suit the mortgage was not due
according to its terms, unless it was rendered due by breach
of condition. Such breach of condition was alleged in the
petition. The defendant denied that the mortgage was due

and denied the breach of condition, and also averred a material alteration in the mortgage since its execution. There was a decree for the plaintiff.

One defendant, Northern Minnesota Land & Investment Company, has appealed.—*Reversed.*

*Berry & Watson, Tobin & Jensen,* for appellant.

*O. C. Brown,* for appellee.

EVANS, J.—The defendants in the court below were Northern Minnesota Land & Investment Company and W. A. Fry and wife. The first-named defendant was the maker of the mortgage and note sued on. Since the execution of the note and mortgage, the land covered by the mortgage was sold to Fry, who assumed the mortgage. The mortgage sued on was for $12,000 and was for purchase money. The seller of the land and the payee of the note and mortgage was Osborn Loper. The note and mortgage were dated February 29, 1912, and were made payable March 1, 1917. On March 1, 1912, the mortgagor conveyed the land to defendant Fry, who assumed the mortgage thereon, and gave to his grantor a second purchase money mortgage thereon for $7,500. The mortgage in suit contained the following condition:

"The said Northern Minnesota Land & Investment Company, mortgagor, shall pay all taxes and assessments levied upon said real estate before the same become delinquent and in case not so paid, the holder hereof shall have the right, at his option to declare the whole sum of money herein secured due and collectible at once, or he may pay such taxes and assessments and be entitled to interest at the rate of six per cent. per annum, and this mortgage shall stand as security for said taxes and interest so paid. The said mortgagor shall keep all buildings and other improvements in good repair and keep the said buildings constantly insured for the benefit of the mortgagee in some good reliable insurance company to be

approved by the mortgagee, during the time in which this mortgage shall remain unpaid; insurance policies to be held with mortgage. Failing so to do, the mortgagee may insure the same and this mortgage shall stand as security for the premium so paid and six per cent. interest thereon. And it is further stipulated and agreed that in the event of failure to pay any of said money, either principal or interest within 60 days after the same becomes due, or a failure to perform or comply with any of the foregoing conditions or agreements, shall cause the whole sum of money herein secured to become due and collectible at once at the option of the holder, and this mortgage may thereupon be foreclosed immediately for the whole of said money, interest and costs."

The breach of condition charged is that the mortgagor wholly failed to comply with the conditions of the mortgage requiring it to keep said buildings constantly insured for the benefit of the mortgagee.

The suit was begun on May 25, 1912. The defendant, appellant, resists the claim of right of the plaintiff to declare the mortgage due by reason of such breach, mainly on the following grounds:

(1) That upon a fair construction of the terms of the mortgage, no such right of election was conferred upon the holder, at least without previous notice and demand.

(2) That on April 12, 1912, Fry, the then owner of the land, did obtain a policy of insurance to the extent of $2,000 upon the buildings in question, in his own name as owner of said premises; and that such insurance as a matter of law inured to the benefit of the mortgagee by virtue of the condition of the mortgage.

(3) That prior to the beginning of the action, and on May 21, 1912, the mortgagor, through its attorney, wrote a letter to the plaintiff's attorney, fully and freely offering to obtain the necessary insurance for the holder of the mortgage; or to permit him to do so at the defendant's expense; and

that subsequently, on June 5, 1912, such defendant procured through Fry, and from the insurance company, a proviso which was to be attached, and was attached to Fry's insurance policy, whereby the same was made payable to the mortgagee as his interest might appear, and the plaintiff was notified accordingly.

These offers or tenders were all rejected by the plaintiff. The defendant further denied the validity of the mortgage sued on, on the ground that it was materially altered since its execution, without the authority of the defendant; that such alteration consisted in the insertion of the following clause as part of the conditions of the mortgage: "Insurance policies to be held with mortgage."

1,3. MORTGAGES: stipulation for insurance: compliance with: policy payable to assignee.
I. The first contention urged by the appellant is that the insurance effected by Fry on April 12th, did, as a matter of law, inure to the benefit of the holder of the mortgage, and did, therefore, comply with all the conditions of the mortgage.

It seems to be settled that a mere mortgagee has no interest in a policy of insurance issued to a mortgagor upon the mortgaged property, unless such interest be created by some covenant or condition between mortgagor and mortgagee in relation thereto.

In the absence of such covenant, the contract of insurance is strictly personal between the insurance company and its patron. *Ryan v. Adamson,* 57 Iowa 30.

On the other hand, it is equally well settled that where a mortgagor covenants to maintain insurance for the benefit of the mortgagee, then a policy of insurance held by him will inure to the benefit of the mortgagee as a matter of equitable right, regardless of whether the policy was in express terms payable to the mortgagee or not. *Heins v. Wicke,* 102 Iowa 396; *Swearengen v. Hartford Ins. Co.,* 34 S. E. 449.

This latter proposition is conceded by appellee; he con-

tends, however, that it has no application to this case for the reasons:

(1) That Fry had never obligated himself to maintain insurance for the benefit of the mortgagee.

(2) For the further reason that Fry's insurance, upon the undisputed facts in this record, was void from the beginning; and

(3) That the policy was never delivered or tendered to the mortgagee.

Turning to the first reason thus urged, the record is very meager as to the precise extent of the obligation assumed by Fry as to the mortgage in suit.

The deed under which Fry took his title to the land is not in the record. All that appears is in the form of admissions in the pleadings to the effect that Fry took the land "subject" to the mortgage, and that he "assumed and agreed to pay the note and mortgage sued on."

This language is somewhat indefinite. We think it is sufficient, however, to indicate an assumption of the mortgage according to its terms. The effect of the alleged invalidity of the insurance policy is considered in another division hereof.

II. Assuming that the defendant failed to procure valid insurance for the benefit of the mortgagee, we proceed to consider whether for this failure alone the plaintiff was entitled under the terms of the mortgage to declare the same immediately due. We have set forth above all the conditions of the mortgage upon which appellee relies. The mortgage does not in specific terms provide that a failure to maintain insurance shall render the whole mortgage due. It does provide in general terms that a failure to perform or comply with any of the "foregoing conditions or agreements" shall cause the whole sum to become due "at option of the holder." It provides specifically that a failure to pay principal or interest for sixty days after due shall cause the whole sum to become due. It also provides specifically that a fail-

2. MORTGAGES: right to foreclose : special and general clauses : harsh results, strict construction to avoid.

ure to pay taxes or special assessments before they become delinquent shall give the mortgagee the right ''at his option'' to declare the mortgage due. It provides that the mortgagor shall keep the buildings insured for the benefit of the mortgagee in a company to be approved by the mortgagee. *''Failing so to do the mortgagee may insure the same and this mortgage shall stand as security for premium so paid and 6% interest thereon.''* The contention of the appellant is twofold: (1) that the mortgage specified the agreed remedy available to the mortgagee in case the mortgagor should fail to furnish satisfactory insurance, which was that the mortgagee might insure at the expense of the mortgagor and the mortgage should stand as security for the premium; that this remedy was exclusive; that no right was conferred upon the mortgagee to declare the mortgage due for such breach; (2) that if such remedy was not exclusive then the mortgage conferred upon the mortgagee the option of two remedies and that he was bound to notify the mortgagor of his election before he could declare the mortgage due.

We reach the conclusion that the first contention of the appellant at this point should be sustained. The remedy thus stipulated for was apparently adequate. Its exercise by the mortgagee would automatically cure the breach. The mortgagor could not thereafter perform such condition because already performed by the mortgagee. True, the mortgagor could immediately pay the mortgagee the amount of the premium expended, but the provision of the mortgage does not require immediate payment; nor does it make immediate payment a condition the breach of which could render the mortgage due. Contracts will not be construed in favor of harsh results unless their express terms require it. To declare due instanter a $12,000 mortgage which by its terms would not be payable for five years is a drastic remedy.

Appellee relies at this point upon *Moore v. Crandall,* 146 Iowa 25, and contends that it is decisive. The two cases are clearly distinguishable. In the *Moore* case, the mortgage con-

tained a specific provision giving the mortgagee the right to declare the mortgage due for the failure of the mortgagor to effect insurance as required.  Such specific provision is absent from the mortgage before us.  We would not be justified in reading such provision into the mortgage before us by mere construction.  The appellee relies at this point upon the provision that a failure to comply with any of the "foregoing conditions or agreements shall cause the whole sum of money herein secured to become due and collectible at once."  The argument is that this provision is sufficiently comprehensive to include the failure to procure insurance.  The provision here quoted from the mortgage is preceded therein by three specifications of breaches of condition which shall render the mortgage due at once.  These are:  (1) failure to pay taxes before delinquent;  (2) failure to pay installments of principal when due;  (3) failure to pay interest when due.  Failure to procure insurance is not thus specified.  Under the familiar rule of "*ejusdem generis*" as well as that of "*expressio unius,*" the general phrase "foregoing conditions" must be construed to refer to those specified in the preceding lines.  In other words, the specifications control the scope of the terms following.  It will be noted that a specific remedy is stipulated for in case of the failure of the mortgagor to procure insurance, viz.: "the mortgagee may insure the same, etc."  There is no suggestion of an optional remedy in this specification.  A comparison of this specification with that which relates to the payment of taxes is significant.  Such specification relating to failure to pay taxes is that "the holder hereof shall have the right at his option to declare the whole sum of money herein due and collectible at once *or* he may pay such taxes and assessments and be entitled to interest at the rate of 6% per annum and this mortgage shall stand as security."  To sustain the appellee's contention would be to read a like provision with the foregoing into the specification relating to the failure to procure insurance.

In the case of *Swearingen v. Lahner*, 93 Iowa 147, a mort-

gage was declared due for failure to pay interest. It was held that no notice of election was necessary as a condition to bringing suit. But no question of option was involved in that case. A suit was the only remedy which the plaintiff had for the collection of his interest. It follows, therefore, that the plaintiff was not justified under the terms of the mortgage in declaring the same due for the breach of conditions specified.

III. We think the record discloses further reason why the plaintiff was not entitled to declare the mortgage due. Fry did procure an insurance policy. According to his testimony, he left it with the insurance agent with instructions to forward to the mortgagee. This was, however, not drawn payable to the mortgagee. Some evidence was offered by the plaintiff tending to show that Fry did not intend that his insurance should operate to the benefit of the mortgagee. The record as a whole, however, does not leave room to doubt the good faith of Fry. Upon the record as made, it is quite clear that the insurance procured by Fry, if valid, would have inured to the benefit of the mortgagee if a loss had occurred.

**1,3. MORTGAGES: stipulation for insurance: compliance with: policy payable to assignee.**

It is urged by the plaintiff, however, that the policy procured by Fry was wholly void because it erroneously stated the encumbrance upon the property to be $12,000 only, whereas there was a second mortgage of $7,500 thereon. As against this, the testimony for the defendant is to the effect that this omission was not fraudulent or intentional and that the insurance agent who prepared Fry's application and policy knew of the $7,500 mortgage and as a notary public had taken Fry's acknowledgment thereto. Without passing upon the ultimate validity of the policy, it is enough to say that the record discloses a good-faith attempt upon the part of Fry as the purchaser of the mortgaged premises to comply with the requirements of the mortgage in the matter of insurance and that none of the objections which

**4. MORTGAGES: stipulation for insurance: good faith effort to comply: foreclosure: right to notice.**

are now urged as a ground for declaring the mortgage due were made at any time before the commencement of suit. It is only elementary justice to hold that when a mortgagor actually procures insurance in some form in a good-faith attempt to comply with the requirements of the mortgage, a mortgagee cannot arbitrarily declare a default without giving to the mortgagor notice of his objection and a reasonable opportunity to meet it. Such was the holding in *Provident Sav. L. Assur. Soc. v. Georgia Ind. Co.,* 52 S. E. 289 (Ga.).

Such a holding is especially appropriate where the requirement for insurance is so indefinite as in this case, implying a future conference of the parties. Not only was the mortgagor given no opportunity to meet objections to Fry's insurance, but there was an active purpose on the part of plaintiff to begin the suit before the alleged default could be cured. Before the suit was begun and the default declared, the attorney for the mortgagor wrote to the attorney for the mortgagee, offering in effect to do whatever the mortgagee might desire and offering that the mortgagee might take out the insurance and that he (the attorney) would pay for the same. No answer was returned to this letter until more than ten days later. In the meantime, the suit had been begun. At the time this letter was received by the attorney for the mortgagee who had the mortgage in his custody, negotiations were pending between the mortgagee Loper and the plaintiff herein (a brother-in-law) for the sale of the mortgage. As between the purchaser and the seller the mortgage was considered more valuable and salable with the specified breach of condition entitling the holder to an immediate foreclosure than it would be if required to run for five years according to its terms.

We hold, therefore, that inasmuch as Fry procured his insurance in good faith, he was entitled to some notice of the mortgagee's objection thereto and a reasonable opportunity to meet such objections before the mortgagee could declare the mortgage due for such alleged default.

IV. Was the mortgage in suit rendered nugatory by a material alteration therein after its execution? The facts upon which this contention rests are brief.

5. PRINCIPAL AND AGENT: apparent authority of agent: right to rely.

It appears that on and prior to February 29, 1912, some negotiations were pending (perhaps a contract) between appellant herein and one Osborn Loper, whereby this appellant was purchasing said land from Loper, and was executing back the $12,000 mortgage for a part of the purchase price.

It does not appear from the record to what extent these negotiations had proceeded. If a contract of purchase and sale had been actually executed, its terms are not made to appear. It does appear that the appellant company sent its agent, Garth Carrier, to New Virginia to ''close the deal'' with Loper. He carried with him a note and mortgage for $12,000, duly executed by the appropriate officers of the appellant company, and this was to be delivered to Loper upon receiving from Loper a deed of the land.

The mortgage thus offered to Loper was not satisfactory to him in its conditions as to insurance, and he refused to execute a deed of the land unless a change were made in the mortgage.

Thereupon Carrier agreed with him upon a change, and agreed to insert therein, and did insert therein, the clause already pointed out: ''Insurance policies to be held with mortgage.'' With such insertion, Loper accepted the mortgage and delivered the deed to Carrier, who carried the same to his principal. The act of Carrier was done in good faith in the belief that he had authority to do it. It is now urged that he had no such authority, and that the alteration, therefore, destroyed the validity of the mortgage as such.

There are various reasons why this contention cannot be sustained. It will be noted that the alteration complained of was made before delivery and not after. It was made by the appellant's agent, and while the mortgage was properly in his custody and in his control. His custody and control

was that of his principal.   While it continued, the paper was not in force or effect.   It was subject to withdrawal or change or obliteration.   Loper had no control over it.   The change actually made by Carrier, therefore, was not an alteration of an instrument in the strict legal sense.   *Tharp v. Jamison,* 154 Iowa 77.   If he had not afterward delivered the instrument in its changed form, the mere alteration would have been as harmless as white paper.

The real question, therefore, presented under the evidence is not whether Carrier had authority to make the change in the paper, but whether he had authority to deliver it in its changed form.

The extent of the authority of an agent is often difficult to define in exact terms, even as between principal and agent.   As a practical fact, it is usually to be ascertained by fair implication rather than by exact words used between principal and agent.

It is shown that Carrier was not an officer of the corporation, but was a mere employee.   This, however, is not conclusive on the question of authority.   Only Carrier himself testified at the trial that he was without authority to deliver the mortgage in its changed form.   Such testimony was manifestly based upon his mere opinion or conclusion.   His present opinion is not persuasive in the presence of the fact that at the time of the transaction he believed in good faith that he was acting within his authority.

Loper had no way of ascertaining the exact extent or limitations of his authority unless they were communicated to him.   Inasmuch as Carrier was concededly the agent of the appellant for some purpose and to some extent, Loper had a right in good faith to rely, within reasonable limits, upon his apparent authority.

The appellant, as a corporation, was necessarily represented by some agent in every transaction.   Carrier was its only representative present in this transaction.

It is urged that he was there with authority only to de-

liver the particular mortgage in the form in which it had been previously executed; but this is a mistaken view of the record. He was there not only to deliver the mortgage to Loper, but also to obtain from Loper a deed to the appellant.

The mortgage when executed was tentative only. It covered the land of Loper, not the land of the appellant. It was not intended to be delivered or to become effective unless Loper should first execute and deliver a deed of the land. Carrier was there to "close the deal." He testified as to the change in the mortgage as follows: "Had no difficulty in getting the deal through with him except this change. He refused to sign the mortgage (deed) until he was satisfied with that. . . . Loper wanted it. Before he would close the deal, I had to write that in the mortgage."

These, then, were the negotiations which resulted in the delivery of the deed by Loper to the appellant. Carrier could not have obtained the deed for appellant without such change. There is no question of the good faith of either Carrier or Loper at this point.

It is doubtless true that the change in the mortgage created a legal defect in the instrument, and perhaps in the recording thereof, because there was no acknowledgment of it in its changed form. If any question of 6. PRINCIPAL AND AGENT: principal repudiating unauthorized acts of agent: keeping benefits. constructive notice had arisen, it might have proved embarrassing to Loper on that account. In that sense, Carrier exceeded his authority; but such excess of authority created no equity in favor of appellant, while it elected to retain the benefits of the transaction. Nor do we think that the defect of recording and of constructive notice could extend any further than to eliminate in legal effect the inserted clause from the record.

Granting, even, that the appellant could have repudiated the transaction when it discovered that Carrier had exceeded his authority, it could only do so by restoring to Loper the benefits received.

It is well settled in this state that a principal cannot

repudiate the acts of its own agent as for excess of authority, while holding to itself the beneficial fruit of the transaction thus repudiated. The appellant has not repudiated the transaction in that sense. It has never offered to restore the land. It does assume that it has a right to ignore the inserted provision and to treat the mortgage as it was when it was put in the hands of its agent. The effect of such a course would be to enforce against Loper a contract to which he never assented.

We are clear, therefore, that the appellant is in no position to complain of the change made in the mortgage by its own agent before delivery. Considerable space is devoted in the argument to the point whether the alteration was material, if not authorized. In view of what we have already said, we need not discuss that feature.

For the reasons indicated in divisions II and III hereof it must be held that the suit was prematurely brought and the decree below must be reversed for such reasons.—*Reversed.*

LADD, WEAVER and PRESTON, JJ., concur.