JOHN CANAVAN, Appellant, v. DANIEL J. COLEMAN et al., Appellees.

**INSURANCE: Right to Proceeds—Title Holder (?) or Mortgagee (?)** A title holder who, for his own personal protection, and at his own expense, takes out insurance, and who is in no manner a party to a mortgage on the premises, except that he has, by deed in escrow, conveyed the property to the mortgagee, on condition that the deed be surrendered to him if he pays the mortgage by a named date, is entitled, in case of loss prior to said named date, to the proceeds of the policy, even though, subsequent to the loss, he fails to pay the mortgage, and thereby loses the property to the mortgagee. (See Book of Anno., Vol. I, Sec. 9018, Anno. 17-a1; Vol. II, Sec. 9018.)

Headnote 1:   26 C. J. p. 438 (Anno.)

Headnote 1:   11 A. L. R. 1309; 14 R. C. L. pp. 915, 1365–1368.

*Appeal from Webster District Court.*—SHERWOOD A. CLOCK, Judge.

NOVEMBER 22, 1927.

Action in equity, to settle and adjudicate the rights of rival

claimants to the proceeds of an insurance policy on a dwelling house which was destroyed by fire. The relationship of the parties and the material facts are fully stated in the opinion. Decree dismissing plaintiff's petition and awarding the insurance to the intervener, Iowa Savings Bank, assignee of the defendant Coleman. Plaintiff appeals.—*Affirmed.*

*Price & Burnquist,* for appellant.

*Kelleher & Mitchell* and *Maher & Parry,* for appellees.

STEVENS, J.—Jeremiah Coleman died intestate in 1922, seized of the legal title to a tract of 240 acres of land in Webster County. The land was incumbered by two mortgages, one of which, a second mortgage for $8,000, was held by appellant. The administratrix of the Jeremiah Coleman estate obtained authority in probate to sell the 240-acre tract, subject to the mortgages, for the purpose of paying debts. The land was purchased by appellant for $1,000, and the sale was approved on June 10, 1924. Prior to the order in probate for the sale of the land, appellant, Canavan, commenced an action to foreclose the $8,000 second mortgage held by him. In November following, appellee Daniel J. Coleman commenced an action against the surviving widow and heirs of Daniel Coleman to quiet title in him to the 240-acre tract. The basis of this action was an alleged oral gift of the farm by the decedent to him. Daniel Coleman also intervened in the foreclosure action instituted by appellant, praying the same relief. He had also previously filed objections in probate to the sale of the land, together with a claim for the value of improvements placed on the premises. The defendants in the action commenced by Daniel Coleman to quiet title to the land filed answer, admitting the allegations of the petition. On November 5, 1925, the appellant, Canavan, and the appellee Coleman entered into a stipulation in writing, for the purpose of settling all matters of controversy between them. The stipulation provided that title to the land should be quieted in Coleman; that he should execute a quitclaim deed conveying the same to appellant, and deposit the same with the clerk of the district court, to be delivered to appellant on March 1, 1926, provided that appellee had not, prior to that date, paid the mortgage, with accumulated interest; that appellant should

withdraw his bid in the probate proceeding for the sale of the land, and consent that the sale be set aside; that appellee should remain in possession of the farm until March 1, 1926, and receive all rents, issues, and profits to be derived therefrom; that he would waive all claims asserted by him for the value of the improvements placed on the real estate; that, in the event that appellee did not pay the second mortgage on or before the day fixed, he would surrender possession to appellant; and that the decree should provide for the foreclosure of the mortgage. On the same day, a decree, based upon the stipulation, was filed. The decree contained the following provision:

"The provisions with reference to the execution of special execution, the preservation of rights of redemption, and the transfer of title, if any transfer be made from the said Daniel J. Coleman to the said John Canavan, are covered by the stipulation and deed executed contemporaneously herewith, which are by reference made a part hereof."

On January 19, 1926, the dwelling house on the farm was totally destroyed by fire. Prior to this date, appellee had taken out insurance on the house in the sum of $3,500. The next day after the fire, he assigned the policy to the Iowa Savings Bank. Appellee defaulted in the payment of the $8,000 mortgage to appellant, together with the possession of the farm.

Thereafter, Canavan commenced this action against Daniel Coleman, to recover the insurance, a draft for which, payable jointly to Coleman, the Iowa Savings Bank, and Canavan, had been turned over to the bank by the insurance company, and was held by it. The Iowa Savings Bank intervened in this action, claiming the insurance, as the assignee of appellee. As already stated, the court found that the intervener was entitled thereto, and ordered that payment be made accordingly.

It will be observed from the foregoing recital of the facts that appellee was not the mortgagor, nor had he ever assumed or agreed to pay the mortgage. As indicated by the sale in probate, there was little equity in the farm over and above the two mortgages. Appellant, tacitly at least, concedes that appellee had an insurable interest in the property covered by the policy; that it was taken out for his own benefit; and that the premium was paid by him. Appellant first learned that the house was insured, after the fire.

The proposition urged by appellant upon which a reversal is asked is that, under all the facts and circumstances disclosed, a court of equity will direct the application of the proceeds of the insurance to the maintenance of the status of the property as it was at the time the stipulation was entered into, and for the benefit of the person bearing the loss.

First, as to the relationship created by the stipulation between the parties thereto. No question has at any time been raised as to the validity of appellant's mortgage or his right to foreclose the same. The controversy in the foreclosure suit was as to the claims and rights of appellee to demand payment for the value of improvements placed by him upon the premises. By the terms of the stipulation these claims were waived, and a decree foreclosing the mortgage, with a provision suspending the right to a special execution, entered. To effectuate the purpose of the parties, and to establish the record title in appellee, a provision was incorporated in the decree, quieting title in him.

It is contended by appellant that the equitable title to the land was conveyed to appellant, and that the legal effect of their agreement was to give appellee an option for the repurchase thereof. This was not, as we view the record, the intention of the parties. Both appellant and appellee were benefited by the arrangement. The expenses of an execution sale were avoided, and possession was retained by appellee until March 1, 1926, which included, with some extension, what might otherwise have been the period allowed to him by law to redeem from execution sale. The parties hardly contemplated that title should pass at the time of the execution and delivery of the quitclaim deed to the clerk. Neither the stipulation nor the decree contains a provision for the repurchase by appellee or the reconveyance of the premises to him by appellant. The parties apparently did not contemplate a reconveyance. Perhaps this was not necessary, in any event. Had appellee paid the judgment, it would have been released, and the deed simply returned to him. The relation was not that of vendor and vendee. A vendor is one who negotiates a sale and disposes of property for a consideration. No consideration was to be paid to him. By his default in the payment of the judgment, appellee became a mere naked grantor,—an instrumentality for conveying the legal title. *Rutland v. Brister*, 53 Miss. 683.

A contract of insurance, without more, is a purely personal contract of indemnity between the insurer and the insured. What, then, are the equitable circumstances in this case that entitle appellant to claim the insurance in controversy? The policy was taken out by appellee for his own protection. He was in no wise indebted to appellant, nor was he under any obligation, moral, legal, or equitable, to take out and pay for insurance for his benefit. The mortgage in question did not contain a provision imposing the duty upon the mortgagor to take out and carry insurance for the benefit of the mortgagee, and the subject of insurance is not referred to in the stipulation. No case cited by appellant, as we understand their holdings, announced any equitable principle applicable to the facts of this case which sustains his contention.

The rule announced in *Brady v. Welsh*, 200 Iowa 44, was applied in a controversy involving the relationship and rights of a vendor and vendee, and is not in point. In such cases, where a loss of this character is involved, familiar equitable doctrines are frequently invoked. The same is true of *In re Hackbart*, 203 Iowa 763. In that case, the mortgagor covenanted and agreed, in both the first and second mortgages, to take out and carry insurance for the benefit of the mortgagees. In such case, the mortgagees acquired an equitable lien upon the insurance. It was necessary for the junior mortgagee, who had purchased the property at his own execution sale, to redeem the land from a subsequent execution sale by the holder of the first mortgage. The mortgagor in this instance pledged the insurance as security for the mortgage debt. The contracts of insurance were not, therefore, merely personal contracts of indemnity between the insurer and the mortgagor. Further, the second mortgagee having redeemed from the first mortgage sale, an equitable right arose in his favor, in the nature of a right of subrogation to the proceeds of the insurance. The situation in the case before us is wholly different.

An examination of all of the cases cited by appellant, with possibly one exception, shows they involved controversies between a vendor and a vendee. The possible exception is *Williams v. Lilley*, 67 Conn. 50 (37 L. R. A. 150). The decision in that case was bottomed upon a contract which was peculiar in its nature, and which caused the court to limit the decision

strictly thereto. The remaining cases cited and relied upon by appellant are as follows: *Phinizy v. Guernsey,* 111 Ga. 346 (50 L. R. A. 680); *Brakhage v. Tracy,* 13 S. D. 343 (83 N. W. 363); *Russell v. Elliott,* 45 S. D. 184 (186 N. W. 824); *Skinner & Sons', S. B. & D. D. Co. v. Houghton,* 92 Md. 68 (48 Atl. 85); *McGinley v. Forrest* (Neb.), 22 A. L. R. 567.

*Cetkowski v. Knutson,* 163 Minn. 492 (204 N. W. 528), affords a good illustration of the application of equitable principles to a controversy between a vendor and vendee where the proceeds of a loss by fire are involved. In that case, the vendor was induced to enter into an executory contract of sale with the vendee by fraud. While the vendee was in possession of the property, certain buildings and property, upon which the vendee had taken out insurance in his own name, were destroyed by fire. The court held that, as the contract might have been rescinded by the vendor, on account of the fraud practiced by the vendee, the insurance money should be paid to the former, so as to restore, so far as possible, the status existing at the time the fraud was perpetrated.

It is true that the loss of the buildings destroyed by fire in this case must fall upon appellant, but this alone affords no equitable basis for depriving appellee of the benefit of his contract of insurance. There is no equitable principle with which we are familiar, the application of which to the facts of this case would justify the relief sought by appellant. There were no equitable rights to be adjusted.

It was early held in this state that a mortgagee, in the absence of an agreement to that effect, had no interest in a policy of insurance issued to the mortgagor for his own benefit. *Ryan v. Adamson,* 57 Iowa 30. To the same effect, see *Johnson v. Northern Minn. L. & Inv. Co.,* 168 Iowa 340.

No further elaboration is necessary. The judgment and decree of the court below is affirmed.—*Affirmed.*

EVANS, C. J., and FAVILLE, KINDIG, and WAGNER, JJ., concur.