J. C. BOYCE, Appellant, v. FARMERS' MUTUAL INSURANCE ASSOCIATION, Defendant, et al., Appellee.

No. 40020.

12

November 21, 1929.

*Evans & Garrett* and *Lee, Steinberg & Walsh,* for appellant.

*Baker & Doran,* for appellee.

Kindig, J.—Sometime in the year 1919, the intervener-appellee, Alvin Treloar, sold to one Arthur McCabe 240 acres of land in Story County. It appears that the purchase price  was $84,000. Part of that consideration seems to have been paid in cash, and McCabe handled the balance thereof by assuming a $45,000 mortgage then on the land, and giving to appellee a second mortgage in the sum of $5,000. Subsequently, when those indebtednesses matured, McCabe could not raise $50,000 in cash, and therefore, in 1923, he called upon appellee for assistance in refinancing. Appellee consented to lend aid in this regard, provided that McCabe would further protect him by insuring the farm buildings.

As a result of appellee's co-operation, McCabe removed the $50,000 incumbrances in the following manner: First, he obtained $24,000 on a first mortgage from the Collins Mortgage Company, February 23, 1923; second, he gave appellee two

mortgages on the same date, one a second, for $18,000, and the other a third, amounting to $5,000. Apparently the balance of the obligation represented by the $50,000 incumbrances was paid in cash. Later, on March 1, 1923, the Collins Mortgage Company aforesaid assigned the first mortgage of $24,000 to the intervener Equitable Life Assurance Society of the United States. That assignment, however, was before the policy in suit had been issued, and, moreover, said first mortgage contained no insurance clause. Thereafter, on March 28, 1923, such policy was issued to said McCabe by the defendant, Farmers' Mutual Insurance Association. This contract of insurance covered the house on the farm, and protected the insured against fire loss to the extent of $4,000.

McCabe paid the third mortgage of $5,000 due appellee. Default, however, was made by McCabe on the second mortgage of $18,000, and in April, 1925, appellee commenced an action to foreclose the same. Consequently, a judgment of foreclosure was entered, and on October 30th thereafter, the land was sold at sheriff's sale to appellee, the holder of said second mortgage, who bid the entire sum, minus $862.41, which remained as a deficiency judgment. While, under the oral agreement aforesaid, the insurance policy was held by McCabe for appellee's benefit until the 11th day of June, 1925, on that date the same was orally assigned and delivered by the former to the latter.

On May 25, 1926, a fire destroyed the house on the premises. Parenthetically it is noted that the fire occurred during the period of redemption. J. C. Boyce, the plaintiff and appellant, then, under date of June 8, 1926, became interested, through a purported assignment from McCabe covering the latter's alleged interest in the fire loss. Demand was made upon the Farmers' Mutual Insurance Association for the $4,000 named in the policy; but the company refused to pay the appellant, McCabe's assignee, for the reason that it had notice of, and had consented to, the previous assignment from McCabe to appellee. Thereupon this suit followed, with the result that the appellant and the appellee Equitable Life Assurance Society of the United States were denied the insurance money, while the appellee Treloar was declared to be entitled thereto. A position of neutrality was taken by the Farmers' Mutual Insurance Association, and it paid the money into court for disposition according to law. The defend-

ant, Farmers' Mutual Insurance Association, and the intervener Equitable Life Assurance Society of the United States do not appeal. Hence, the only parties involved at the present time are Treloar and the appellant. Both claim the insurance money through assignments.

I. Preliminary to a discussion of the major propositions, it is convenient to recognize the general rights of an assignee. Such rights can rise no higher than those of the assignor. *Union Bldg. Assn. v. Rockford Ins. Co.*, 83 Iowa 647; *Steltzer v. Chicago, M. & St. P. R. Co.*, 156 Iowa 1.

So the appellant, through his assignment under date of June 8, 1926, could acquire no property rights or interests in the insurance money except such as were then owned by the assignor, McCabe. If McCabe, by the prior oral assignment to appellee, had transferred all of his interest in the policy and insurance fund, he could bestow nothing upon appellant. Also, if McCabe gave the policy to appellee as security, appellant, through the later transaction, necessarily would take the same subject to such equity. At the threshold, therefore, it is contended by appellant that there was no valid assignment from McCabe to appellee.

II. An oral assignment of a fire insurance policy is valid so far as McCabe, appellant, and appellee are concerned. *State Cent. Sav. Bank v. St. Paul F. & M. Ins. Co.*, 184 Iowa 290; *Bechly v. Central Nat. Fire Ins. Co.*, 195 Iowa 177.

No objection is made thereto by the company. (We do not decide or suggest that such exception could have been legally taken by the insurer.) That institution, according to the record, consented to the oral arrangement between McCabe and appellee. Therefore, it is necessary to determine whether there was in fact an assignment from McCabe to appellee.

III. Without such an agreement, appellee would have no interest in the policy or the insurance. *Canavan v. Coleman*, 204 Iowa 901. Therein we said:

"It was early held in this state that a mortgagee, in the absence of an agreement to that effect, had no interest in a policy of insurance issued to the mortgagor for his own benefit. *Ryan v. Adamson*, 57 Iowa 30. To the same effect, see *Johnson v. Northern Minn. L. & Inv. Co.*, 168 Iowa 340."

IV. Did the appellee prove that the policy was his? According to the district court, he did. To repeat, this cause was tried at law to the court, without a jury. After hearing the evidence upon such trial, the district court found "that the said Alvin Treloar [appellee] is now, and was at the time of the destruction of said dwelling house by fire, the true and lawful owner of said policy." Said finding had the same force and effect as a jury's verdict, and we are bound thereby if the conclusion has substantial support in the evidence.

Obviously there is such basis. In the beginning, the insurance was an inducement for appellee's accommodation of McCabe when the indebtedness on the land aforesaid was refinanced. Appellee's second mortgage contained this provision:

"And it is hereby agreed that if the said parties of the first part [McCabe] * * * fail to further secure said note by insurance on said buildings on said land in such insurance company as may by the second party be selected * * * said note secured thereby shall become due and payable immediately thereafter."

Another policy of insurance was obtained by appellee for these buildings, and in April, 1925, he commenced an action to foreclose said mortgage.

One basis therefor and one ground of recovery was that, because of McCabe's default, the appellee "insured the buildings upon said premises at a cost of $155.31." Appearance was made in that suit by McCabe. During the trial, it appears that McCabe exhibited the present insurance policy; not the one contended for by appellee in the foreclosure suit. Resultantly, the district court denied appellee the relief prayed in the foreclosure suit so far as it related to this item of insurance, because McCabe had already procured such insurance for appellee's benefit, and the insurance thus obtained by McCabe was the very policy now in controversy. First, McCabe exhibited said policy at the foreclosure trial, and then, after that hearing, he delivered it to appellee at the courthouse, with the statements: "Here are your insurance policies. You take these for your protection;" or, "you will need these for your protection." Support for appellee's testimony in that regard is furnished by the witnesses Frank Porter, a lawyer, and Clarence Reimers, a banker.

After thus receiving the policy, appellee, as before stated, took the same to the office of the Farmers' Mutual Insurance Association, where notice of the assignment was made. All premiums thereafter were paid by appellee. On at least one occasion, the statement for a yearly premium seems to have been sent to McCabe; but he, in return, forwarded it to appellee. Claim is made by McCabe that, on the occasion just described, in the courthouse, he did not voluntarily surrender the policy to appellee, but rather, appellee said to him: "Where are those insurance policies? [The one in question, and a tornado policy.]" Responding to that question, McCabe contends that he took the same out of his pocket, and handed them to appellee, who, after an examination thereof, placed them in his pocket. Throughout the following months, no demand, however, was ever made upon appellee for the return of that policy. Corroboration is furnished McCabe by the witness Metsker.

Redemption of the mortgaged premises was never made by McCabe nor anyone else. Nevertheless, McCabe did obtain the rentals for the year ending March 1, 1926. Proofs of loss were made by McCabe, because the policy still was in his name. This was done at the suggestion of the insurance company. Upon this occasion, McCabe consulted attorneys, and it was decided finally that the assignment to appellant was to be made. Declarations were made by an officer of the insurance company to the effect that the insurance association was a nontechnical organization, and accordingly it recognized McCabe's oral assignment to appellee.

Manifestly, therefore, the judgment of the district court was amply supported by the evidence. The trial court having thus concluded, after considering disputed facts, we cannot interfere with the result.

V. Objection of no kind was made by the insurance company against the assignment from McCabe to appellee. Rather than protesting, that institution recognized McCabe's abandonment of the policy and appellee's consequent adoption thereof as his own. Furthermore, by way of repetition, it is recalled that McCabe did not redeem from the foreclosure, nor did anyone for him. Wherefore the insurance company, as well as the district court, considered appellee "the true and lawful owner of said policy."

During the period of redemption aforesaid, appellee had an insurable interest in the property, and was entitled to receive an insurance loss under a policy carried by himself, or the mortgagor for his benefit. *Carlson v. Presbyterian Board of Relief*, 67 Minn. 436 (70 N. W. 3) ; *In re Hackbart*, 203 Iowa 763 ; *Heins v. Wicke*, 102 Iowa 396 ; *Johnson v. Northern Minn. L. & Inv. Co.*, 168 Iowa 340.

Necessarily, then, the appellant received nothing through the subsequent assignment, unless it was the right to have the insurance in the event there was a redemption from the foreclosure sale. (Whether that is true, we do not now decide.)

The judgment of the district court is affirmed.—*Affirmed.*

ALBERT, C. J., and EVANS, FAVILLE, and DE GRAFF, JJ., concur.